UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISTAL G. SLONE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-445-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Christal Slone ("Slone") appeals the denial of her claim for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). [Record No. 10] She contends that the Administrative Law Judge ("ALJ") assigned to her case failed to properly evaluate the opinion of consultative examiner Emily Skaggs, Psy.D., resulting in a decision not supported by substantial evidence. [*Id.*] However, after reviewing the record and considering the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence.

## I.

On November 2, 2023, Slone filed applications for DIB and SSI under Titles XVI and II of the Social Security Act ("Act"). She alleges a disability beginning January 1, 2017, due to bipolar disorder, multiple personality disorder, obsessive compulsive disorder, and attention deficit hyperactivity disorder. [Record No. 7 at 28, 81, 86, 263–94, 330, 336] Slone later amended her alleged onset date to December 10, 2019. [*Id.* at 52] She was forty-two years old at the amended alleged onset date and has a high school education. [*Id.* at 266, 331–32]

ALJ Karen Jackson held an administrative hearing on June 3, 2025, after Slone's claims were denied initially and on reconsideration. [*Id.* at 48–102] Thereafter, she issued an opinion denying Slone's claim for benefits. [*Id.* at 28–40] On October 3, 2025, the Appeals Council denied Slone's request for administrative review of the ALJ's decision, thereby making it the final decision of the Commissioner. [*Id.* at 6–11] The matter is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (*en banc*). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

> First, the claimant must demonstrate that [he or she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [he or she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [his or her] impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, [he or she] is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [his or her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as [his or her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

-2-

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence[1] and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). A reviewing court is further limited in that it is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

### III.

ALJ Jackson applied the proper legal standard in reaching her opinion by conducting the five-step analysis required for evaluating social security disability cases. [Record No. 7 at 29–40] At step one, the ALJ determines if a claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity occurs when a claimant performs significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572(b). ALJ Jackson found that Slone had not engaged in substantial gainful activity since her December 10, 2019, amended alleged onset date. [Record No. 7 at 31] She also found that Slone met the insured status requirements of the Act through June 30, 2026. [*Id.*]

---

[1] Substantial evidence is defined as such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

The ALJ determines at step two whether a claimant has a medically determinable impairment that is severe or a combination of impairments that collectively are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, ALJ Jackson concluded that Slone has the following severe impairments: bipolar I disorder, anxiety disorder, depressive disorder, and post-traumatic stress disorder. [Record No. 7 at 31]

Step three requires the ALJ to ascertain if the claimant has an impairment or combination of impairments that are of severity sufficient to meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. At this step, the ALJ found that Slone's impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Record No. 7 at 31–33]

The ALJ considers at step four whether a claimant has a residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Here, ALJ Jackson found, after consideration of the record, that Slone has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> The claimant can understand, remember, and carry out simple instructions and use judgment to make simple work-related decisions. She is limited to work that is not performed with a specific production rate pace, such as assembly line work or work that requires hourly production quotas. She can occasionally interact with supervisors, coworkers, and the public. She can deal with occasional changes in a routine work setting.

[Record No. 7 at 33] She also determined that Slone had no past relevant work. [*Id.* at 37]

At step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). Here, ALJ Jackson determined that, "[c]onsidering [Slone's] age, education, work

-4-

experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Slone] can perform." [Record No. 7 at 38] These included occupations such as laundry worker, housekeeper, and mail clerk (non-postal). [*Id*. at 39] As a result, the ALJ found that Slone was not "disabled" within the meaning of the Act, from December 10, 2019, through the date of her decision. [*Id*.]

### Evaluation of Dr. Emily Skaggs' Medical Opinion

Slone argues that the ALJ improperly evaluated consultative examiner Dr. Skaggs' opinion, resulting in an RFC determination that is unsupported by substantial evidence. [Record No. 10 at 11–14] More specifically, she contends that the ALJ failed to properly evaluate and explain the persuasiveness of Dr. Skaggs' opinion as required under 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. [*Id*.] Slone challenges the ALJ's finding that Dr. Skaggs' opinion was persuasive only insofar as it assessed no more than moderate limitations, and unpersuasive as to marked limitations and additional mental limitations not included in the RFC. [*Id*.] She further argues that the ALJ inadequately explained the opinion's consistency and supportability because the ALJ cited no evidence and relied instead on conclusory statements. [*Id*; Record No. 13 at 1–2]

The Commissioner argues in response that ALJ Jackson properly discharged her role of weighing the evidence, including the treatment record, when evaluating Dr. Skaggs' opinion, and ultimately finding it not fully persuasive given the overall evidence in the record. [Record No. 12 at 4–12] The Commissioner asserts that the ALJ sufficiently articulated her evaluation of the consistency and supportability factors because the narrative discussion preceding her evaluation of Dr. Skaggs' opinion, identified evidence, with supportive citation, that explained her decision. [*Id*.]

Medical opinions' supportability and consistency "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). The supportability determination is defined in this way: "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). And "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." *Id.*

Stated differently, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 4041.520c(c)(2). And the more "consistent" a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). However, the consistency factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citation modified).

Dr. Skaggs determined after a consultative examination on February 8, 2024, that Slone's capacity to understand, remember, and carry out instructions towards the performance of simple, repetitive tasks appears affected by her mood disorder to a slight degree. [Record No. 7 at 551] Dr. Skaggs further found that Slone's ability to tolerate stress and pressure of day-to-day employment appears affected to a moderate to marked degree. [*Id.*] With respect to sustained attention and concentration towards the performance of simple, repetitive tasks, Dr. Skaggs opined that Slone's abilities were impaired to a slight to moderate degree. [*Id.*]

Finally, Dr. Skaggs concluded that Slone's capacity to respond appropriately to supervisors and coworkers in a work setting appeared impaired to a moderate to marked degree. [*Id.*] In assessing functional capacity, Dr. Skaggs defined "slight" as a mild limitation that generally allows the individual to function well, "moderate" as a limitation that still permitted satisfactory functions, and "marked" as a serious limitation resulting in severely limited, but not precluded, function. [*Id.*] An "extreme" limitation indicates no useful ability to function in the area. [*Id.*] Dr. Skaggs did not assess any of Slone's limitations as extreme. [*Id.*]

ALJ Jackson also found Dr. Skaggs' opinion persuasive to the extent it is consistent with the evidence showing that Slone had no more than moderate mental-functioning limitations requiring the non-exertional mental accommodations included in the RFC. [*Id.*] However, she determined that the opinion was unpersuasive to the extent it suggested Slone required additional limitations or had marked functional limitations because the evidence did not support those findings. [*Id.*] Thus, ALJ Jackson rejected Dr. Skaggs' assessment that Slone had "moderate to marked" limitations in her ability to tolerate stress and pressure in day-to-day employment and in her capacity to respond appropriately to supervisors and coworkers in a work setting because any "marked" limitation is not consistent with the record. [*Id.*]

Although the ALJ's evaluation of the persuasiveness of Dr. Skaggs' opinion was brief, the discussion was sufficient when read in the context of her decision as a whole. Regarding supportability, ALJ Jacson considered Dr. Skaggs' own examination findings and explained that they showed generally normal mental status results. [Record No. 7 at 37] Earlier in the decision, the ALJ discussed Dr. Skaggs' examination findings in detail, noting that Slone exhibited normal eye contact, cooperated with the examiner, and presented with a neat, clean

appearance, normal grooming and normal motor activity. [*Id*. at 35 (citing Record No. 7 at 547–553))] The ALJ also noted that Slone exhibited an appropriate affect, neutral mood, normal speech, appropriate thought content, logical thought processes, and average fund of knowledge. [*Id.* (citing Record No. 7 at 547–553)] In addition, Slone could spell "world" backward, repeat a three-digit series in reverse, perform serial 3s, and demonstrated intact memory and attention. [*Id.* (citing Record No. 7 at 547–553)] By considering Dr. Skaggs' medical evaluation and findings, the ALJ properly evaluated and discussed supportability.

Regarding consistency, ALJ Jackson stated that Dr. Skaggs' opinion "is not generally consistent with the evidence." [Record No. 7 at 37] She explained that Dr Skaggs' opinion of marked limitations was not consistent with the evidence in the record, which support no more than moderate limitations and no limitations in addition to those assessed in the ALJ's RFC finding. [*Id.*] Earlier in her decision, the ALJ explained (with citations to the record) why moderate—not marked—limitations and no additional mental RFC limitations were appropriate. [*Id*. at 31–36] At step three of the sequential evaluation process, the ALJ acknowledged that some mental status examinations documented abnormal findings when assessing moderate, rather than marked, limitations. [*Id*. at 32] ALJ Jackson noted that providers at times observed Slone to be depressed, make poor eye contact, exhibit psychomotor dysfunction, report hallucinations, demonstrate limited insight and judgment, exhibit loud and pressured speech, show decreased attention and concentration, appear anxious, exhibit flight of ideas, appear hyperactive or fatigued, and appear tearful. [*Id*. (citing Record No. 7 at 464, 467, 478, 483, 488, 493, 590–93, 824, 984–86, 989–90, 1259, 1261, 1329–31, 1344–45)]

However, the ALJ emphasized that many mental status examinations documented normal findings. [*Id*.] Jackson noted that providers at time observed Slone to be in no distress;

alert and oriented to person, place, and time; cooperative and pleasant; groomed and hygienic; and exhibiting normal speech, mood, and affect. [*Id*.] Providers also noted at time that Slone displayed logical thought processes; denied hallucinations and delusions; exhibited normal cognition and average intelligence; demonstrated intact memory and fund of knowledge; showed fair attention and concentration; and denied suicidal or homicidal ideation. [*Id*. (Record No. 7 at 451–52,  464, 467, 478, 483, 488, 493, 582–85, 590–93, 656, 664–65, 674–75, 824, 923, 984–86, 989–90, 1040–41, 1045–46, 1182, 1192, 1259, 1261, 1274–75, 1312–13, 1329–31, 1344–45, 1416, 1428)]

Further, the ALJ explained that Slone has reported a degree of activity that does not support a finding that she has more than moderate limitations in her mental functioning. [*Id*.] Specifically, Slone reported being able to attend to her personal care needs, prepare simple meals, do laundry, dust, mop, drive a car, shop in stores, listen to music, paint, write poetry, and care for her service dog. [*Id*. (citing Record No. 7 at 48–78, 344–51)] The ALJ also noted that the record shows that Slone can attend medical appointments. [*Id*. at 32–33 (citing Record No. 7 at 448–1452)] Accordingly, the ALJ concluded that the totality of the evidence demonstrates that Slone has not more than moderate limitations in her mental functioning. [*Id*. at 33]

The ALJ cited the same mental examination findings when assessing Slone's RFC at step four. [*Id*. at 35–36] And Jackson also noted that Slone reported some symptom improvement with treatment and that her treating providers described her impairment as improved, stable, or controlled. [*Id*. at 35 (citing Record No. 7 at 453, 461, 488–89, 656, 822, 824, 868, 1275)]

Considering the decision as a whole, including the RFC discussion addressing Slone's mental functioning, the ALJ sufficiently considered the supportability and consistency factors in finding Dr. Skaggs' opinion of "marked" limitations unpersuasive. Before finding unpersuasive Dr. Skaggs' opinion that Slone had "marked" limitations, the ALJ considered Dr. Skaggs' own examination findings and cited record evidence showing that Slone did not have marked mental impairment or addition RFC limitations. Those discussions allow the Court to follow the ALJ's reasoning in the later evaluation of Dr. Skaggs' opinion, where the ALJ explained that the unpersuasive portions of the opinion conflicted with mental-status examination findings that did not support marked limitations.

Ultimately, most of Slone's argument amounts to a complaint that the ALJ did not repeat this information in a specific section of the decision. But an ALJ is not required to do so. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (unpublished) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why [the medical opinion] was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (unpublished) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three.").

Although Slone argues that the ALJ's explanation was inadequate, the ALJ was not required to adopt the limitations she preferred or discuss the evidence in greater detail than necessary. Instead, she was required only to "explain how [he] considered the supportability and consistency factors," 20 C.F.R. § 404.1520c(b)(2). The relevant inquiry is whether the ALJ's persuasiveness discussion permits meaningful judicial review. *Eckert v. O'Malley*, No.

22-CV-316, 2024 WL 841765, at *5 (E.D. Ky. Feb. 28, 2024) (citing *Terhune v. Kijakazi*, No. 21-CV-37, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022)).

In this case, ALJ Jackson provided an adequate explanation that permits meaningful review and demonstrates that substantial evidence supports her conclusions. *See Richardson*, 402 U.S. at 401; *Bass*, 499 F.3d at 509. And as a result, the Court is not at liberty to "second-guess" this decision "as long as the ALJ cited substantial, legitimate evidence to support his factual conclusions," as she did here. *Ulman*, 693 F.3d at 714.

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     Plaintiff Christal Slone's motion for judgment [Record No. 10] is **DENIED**.

2.     Defendant Commissioner of Social Security's motion for judgment [Record No, 12] is **GRANTED.**

3.     This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: May 22, 2026.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky